# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GERALD F. STANLEY,
             *Petitioner-Appellant,*

v.

VINCENT CULLEN,* Warden of San
Quentin State Prison,
             *Respondent-Appellee.*

No. 08-99026

D.C. No.
2:95-CV-01500-
FCD-GGH

OPINION

Appeal from the United States District Court
for the Eastern District of California
Frank C. Damrell, Senior District Judge, Presiding

Argued and Submitted
July 16, 2010—San Francisco, California

Filed January 31, 2011

Before: William A. Fletcher, Richard C. Tallman and
Jay S. Bybee, Circuit Judges.

Opinion by Judge William A. Fletcher

---

*Vincent Cullen is substituted for his predecessor, Robert Ayers, as Warden of San Quentin State Prison. Fed R. App. P. 43(c)(2).

## COUNSEL

Mark E. Olive, LAW OFFICES OF MARK E. OLIVE, Tallahassee, Florida, Tivon Schardl and Joseph Schlesinger, FEDERAL PUBLIC DEFENDER'S OFFICE, Sacramento, California, for the petitioner-appellant.

Ward Allen Campbell and Jesse Noel Witt, OFFICE OF THE CALIFORNIA ATTORNEY GENERAL, Sacramento, California, for the respondent-appellee.

## OPINION

W. FLETCHER, Circuit Judge:

Petitioner Gerald F. Stanley was convicted in California state court of arson, burglary, and first degree murder of his wife. The court and jury found true several special circumstances making Stanley eligible for the death penalty. Partway through the penalty phase trial, Stanley's counsel moved for proceedings under California Penal Code § 1368 to determine whether Stanley was competent to stand trial. The trial court held a competency trial before a separate jury. The jury returned a verdict that Stanley was competent. The court then resumed the penalty phase before the original jury. That jury returned a verdict of death. The California Supreme Court affirmed the guilty verdict and death sentence on direct appeal. The California courts have denied habeas relief.

Stanley's amended habeas petition in federal district court asserted claims arising out of both the guilt and penalty phases of Stanley's trial, including claims related to Stanley's competency to stand trial. The district court held that a biased juror rendered invalid the verdict of the competency jury. The district court remanded to the state court to allow that court to determine whether it was feasible to conduct a retrial to decide whether Stanley was competent during his penalty phase trial. The district court then entered a partial judgment under Federal Rule of Civil Procedure 54(b) denying all of Stanley's guilt phase claims and holding in abeyance his remaining penalty phase claims.

Stanley appeals on several grounds. First, he contends that the state trial court's failure to institute competency proceedings sua sponte during the guilt phase violated his right to procedural due process. Second, he contends that his trial counsel were ineffective for failing to investigate or raise the issue of his competency to stand trial during the guilt phase. Third, he contends that the district court improperly denied an

evidentiary hearing on a claim that counsel were ineffective in failing to raise a diminished capacity defense during the guilt phase. Fourth, he contends that the district court acted improperly in remanding to the state court for a determination whether a retrial to decide Stanley's competency during the penalty phase is feasible. Fifth, he contends that the district court acted improperly in holding in abeyance his remaining penalty phase claims pending the state court's decision concerning the feasibility of a retrial, and possibly pending the retrial itself, on remand. Finally, he asks us to consider an uncertified claim that he was denied a full and fair hearing by the state courts on his motions to suppress evidence.

For the reasons that follow, we affirm the district court on all five certified claims. We decline to certify the uncertified claim.

## I.   Background

### A.   State Court Proceedings

In 1980, Stanley was charged in Lake County Superior Court with arson, burglary, and first degree murder of his fourth wife, Cindy Rogers Stanley. A description of the murder is contained in the opinion of the California Supreme Court on direct appeal. *People v. Stanley*, 897 P.2d 481, 487-92 (Cal. 1995). At the time of the murder, Stanley was on parole after serving time in California prison for killing his second wife, Kathleen Rhiley Stanley. The Lake County Superior Court appointed William Neill, a former Trinity County prosecutor, to represent Stanley. Neill, together with co-counsel Richard Petersen, represented Stanley during both the guilt and penalty phases of his trial.

Stanley's case was transferred to Butte County in 1982 where it was tried by retired Butte County Superior Court Judge Jean Morony. After a seven-month trial, the jury found Stanley guilty of arson, burglary, first degree murder, and the

special circumstances that Stanley intentionally killed the victim while lying in wait and that Stanley killed the victim for the purpose of preventing her from testifying in a criminal proceeding. In a separate proceeding, the court and jury found true additional special circumstances.

Judge Morony held a penalty phase trial beginning in August 1983. Defense counsel intended to present as mitigating evidence the testimony of psychiatrist Dr. David Axelrad and videotaped interviews of Stanley he conducted. Stanley changed his mind repeatedly over the course of several days and ultimately refused to waive his psychiatrist-patient and Fifth Amendment privileges in order to permit his attorneys to call Dr. Axelrad or present this evidence to the jury. Arguing that Stanley was interfering irrationally with their "entire mitigation strategy," defense counsel moved for competency proceedings under California Penal Code § 1368. Section 1368 provides that either counsel or the court may move for a hearing to determine whether a criminal defendant is competent to stand trial. Judge Morony denied the § 1368 motion twice, finding both times that there was insufficient doubt as to Stanley's competency to warrant a § 1368 hearing. When counsel made the motion a third time, Judge Morony finally granted it. He suspended the penalty phase trial and kept the jury on call pending a determination of Stanley's competency.

A month-long competency trial, with a separate jury, was held in Butte County before Superior Court Judge Reginald M. Watt. In November 1983, that jury returned a verdict that Stanley was competent within the meaning of California Penal Code §§ 1367 and 1368.

Judge Morony then resumed the penalty phase trial before the original jury. By this time, Stanley had changed his mind again. He permitted Dr. Axelrad to testify and allowed his counsel to play the tapes of the Axelrad interviews. On December 28, 1983, the original jury returned a verdict of death.

Stanley appealed his conviction and sentence to the California Supreme Court, which denied relief on direct appeal on July 6, 1995. *People v. Stanley*, 897 P.2d 481 (Cal. 1995). On May 20, 1996, the United States Supreme Court denied Stanley's petition for writ of certiorari. *Stanley v. California*, 517 U.S. 1208 (1996).

In August 1995, Stanley filed a pro se petition for writ of habeas corpus in the Eastern District of California complaining about the conduct of his appellate counsel and of San Quentin officials. *See Stanley v. Ayers*, No. 2:95-cv-1500-FCD-GGH (E.D. Cal. filed Aug. 17, 1995). In January 1996, the federal district court granted Stanley's request for the appointment of counsel and stayed Stanley's execution. The district court appointed federal public defenders to represent Stanley. It stayed and held in abeyance Stanley's federal habeas petition while he exhausted his federal claims in state court.

On July 17, 2002, the California Supreme Court denied Stanley's state habeas petition. It held that some of his claims were procedurally barred as untimely. It denied his remaining claims "on the merits" without a reasoned decision.

## B.    Federal Court Proceedings

Stanley filed an amended federal habeas petition in district court on September 30, 2002. The amended petition asserted twenty-eight claims, including, inter alia, ineffective assistance of counsel (Claims 1, 23, 26); infringement of Stanley's right not to be tried while incompetent (Claims 1, 22, 24); a constitutionally inadequate competency hearing (Claims 1-3); denial of a full and fair hearing on Stanley's Fourth Amendment motions to suppress (Claim 4); illegal searches and seizures by the State (Claim 5); juror misconduct (Claim 21); and evidentiary and jury instruction errors during the guilt (including special circumstances) and penalty phases (Claims 6-20, 24, 25, 27, 28).

On September 2, 2005, Magistrate Judge Hollows ordered an evidentiary hearing on the following issues: ineffective assistance of counsel (Claims 1(b), 1(e), 22, 23, 24), juror misconduct (Claim 21), and prosecutorial suppression of material information (Claim 27). In April 2006, Judge Hollows held an eleven-day evidentiary hearing.

On April 10, 2007, Judge Hollows issued Findings and Recommendations ("F&R") recommending granting relief on Claim 21 of Stanley's amended petition. Claim 21 alleged that a juror in the competency trial had engaged in misconduct by failing to disclose facts during voir dire and by lying about her ability to be impartial. Judge Hollows found that the juror had engaged in misconduct that warranted invalidation of the competency verdict. Judge Hollows recommended that the district court remand to the state court to determine whether a retrial on the question of Stanley's penalty phase competency would be feasible. Judge Hollows also recommended that once the district court adjudicated Stanley's guilt phase claims, the remaining penalty phase claims be held in abeyance pending the state court's determination concerning the feasibility of a retrial.

District Judge Damrell adopted the F&R on the competency juror misconduct claim. Judge Damrell rejected Stanley's contention that the federal court, rather than the state court, should determine whether a retrial on competency is feasible. He concluded that the F&R's suggested remand procedure "makes practical sense and ensures the most efficient use of the court's resources."

On August 29, 2007, Judge Hollows issued an F&R recommending the denial of relief on all of Stanley's pretrial and guilt phase claims and the deferral of adjudication of the remaining penalty phase claims. The F&R recommended denying relief as to the following guilt phase issues relevant to this appeal: Claim 22, that the trial court violated Stanley's right to due process by not sua sponte conducting a compe-

tency hearing during the guilt phase; Claim 1(3)(b), that defense counsel provided ineffective assistance by not moving for a competency hearing during the guilt phase; Claim 24, that defense counsel provided ineffective assistance by not investigating mental health defenses including diminished capacity; and Claim 4, that Stanley did not receive a full and fair opportunity to adjudicate his Fourth Amendment search and seizure claims. The district court adopted the F&R on March 17, 2008, and certified a partial judgment under Rule 54(b). Stanley filed a timely notice of appeal. The district court granted a Certificate of Appealability ("COA") as to the five issues listed at the beginning of this opinion. The State did not cross-appeal the district court's grant of relief on the issue of juror bias in the competency trial.

## II.   Standard of Review

We have jurisdiction pursuant to 28 U.S.C. § 2253. We review de novo a district court's denial of a habeas petition. *Lopez v. Schriro*, 491 F.3d 1029, 1036 (9th Cir. 2007). We review a district court's findings of fact for clear error. *Bonin v. Calderon*, 59 F.3d 815, 823 (9th Cir. 1995).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies. AEDPA permits us to accord relief only if the state court decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Clearly established federal law" consists of holdings of the Supreme Court at the time of the state

court decision, *Williams v. Taylor*, 529 U.S. 362, 412 (2000), but "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010) (internal quotation marks and citation omitted). A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) (as amended) (internal quotation marks and citation omitted).

We review "the state court's last reasoned decision." *Maxwell*, 606 F.3d at 568. The California Supreme Court denied Stanley's habeas petition, stating only that some claims "are procedurally barred as untimely," and all other claims "are denied on the merits." The only other decisions from California courts on the issues certified for this appeal are rulings from the trial judges at the time of the trial. To the extent we can ascertain the trial judges' reasoning from the trial transcript, we review the reasoning of the trial court. Where the state court "reaches a decision on the merits but provides no reasoning to support its conclusion," we "independently review the record." *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002). In such instances "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. ___, ___ (2011) (slip op., at 8). "When it is clear . . . that the state court has not decided an issue, we review that question *de novo*." *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006) (citation omitted).

## III.   Discussion

### A.   Due Process Claim

**[1]** Stanley contends that the state trial court violated his due process rights by failing to initiate a competency hearing

sua sponte during the guilt phase of his trial. The federal district court concluded that it was not unreasonable for the state trial court to conclude that there was not enough evidence before it to raise a doubt about Stanley's competence such that it should have acted sua sponte. We agree.

A defendant has a due process right not to be tried while incompetent. *See Drope v. Missouri*, 420 U.S. 162, 172 (1975); *Pate v. Robinson*, 383 U.S. 375, 378 (1966). Competence to stand trial requires that a defendant have (1) "a rational as well as factual understanding of the proceedings against him," and (2) "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam). "Where the evidence before the trial court raises a 'bona fide doubt' as to a defendant's competence to stand trial, the judge on his own motion must conduct a competency hearing." *Maxwell*, 606 F.3d at 568. We are to consider "whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." *de Kaplany v. Enomoto*, 540 F.2d 975, 983 (9th Cir. 1976) (en banc).

**[2]** In evaluating a procedural incompetency claim, "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required." *Drope*, 420 U.S. at 180; *see also Torres v. Prunty*, 223 F.3d 1103, 1108-09 (9th Cir. 2000). Stanley insisted that his attorneys pursue an alibi defense despite the overwhelming evidence against him. He repeatedly asked the court to remove his attorneys. Each time, after delaying the proceedings for an in camera hearing, he retracted his requests. Further, some of Stanley's interactions with defense counsel Neill and Peterson outside the courtroom suggested mental instability. Throughout the guilt phase, defense counsel Neill and Petersen brought their difficulties with Stanley to the

court's attention. They explained that he was difficult to control, suffered from anxiety, and had at times exhibited what they characterized as a "schizophrenic personality." However, each time defense counsel brought Stanley's behavior to the court's attention, they assured the court that by taking measures such as getting Stanley the proper medication or communicating with him directly, they could ensure that he was competent.

**[3]** On several occasions, counsel specifically informed the trial court that they had no doubt about Stanley's competency to assist them. Trial counsel's assurances to the court are relevant because "a defendant's counsel is in the best position to evaluate a client's comprehension of the proceedings." *Hernandez v. Ylst*, 930 F.2d 714, 718 (9th Cir. 1991); *see also Odle v. Woodford*, 238 F.3d 1084, 1089 (9th Cir. 2001) ("We do not dismiss lightly the fact that no one questioned Odle's competence over the course of two years of pre-trial proceedings and twenty-eight days of trial."); *United States v. Clark*, 617 F.2d 180, 186 n.11 (9th Cir. 1980) ("The fact that [the defendant's] attorney apparently considered him competent is significant evidence that he was competent."). The Supreme Court recognized in *Drope* that "judges must depend to some extent on counsel to bring issues into focus." 420 U.S. at 176-77. Neill and Petersen were unambiguous in asserting their belief that Stanley was competent. For example, on one occasion when Stanley's anxiety temporarily prevented the trial from going forward, Neill told the court, "I don't want to declare 1368, I don't want to declare a present doubt as to the defendant's ability to cooperate . . . because I think his current state can be immediately rectified by the proper medication."

**[4]** There was also evidence before the trial court of Stanley's competency that could have shaped the trial judge's "total experience and his evaluation of the testimony and events of the trial." *United States v. Clark*, 617 F.2d 180, 185-86 (9th Cir. 1980). Throughout the guilt phase Stanley partici-

pated in the necessary colloquies with the court. Stanley also testified coherently and at length during an evidentiary suppression hearing and, later, in his own defense during the guilt phase. That a defendant is "alert, unafraid to address the court, and able to use somewhat technical legal terms appropriately" is a factor suggesting that a competency hearing is not required. *United States v. Lewis*, 991 F.2d 524, 528 (9th Cir. 1993).

**[5]** Both of the state court judges who dealt with Stanley during the guilt phase proceedings indicated that his demeanor in the courtroom did not raise a doubt as to his competency. Judge Patton, who conducted the preliminary hearing and pretrial proceedings, stated that he had not "seen or observed anything about the defendant in the course of the many days of proceedings in which he has been before the court which would indicate to me that there is any doubt as to his mental ability or present capacity to stand trial." When Stanley withdrew his insanity plea, Judge Morony stated his finding that Stanley "is mentally competent, is intelligent and understands the proceedings; he is presently sane and presently competent." These factual findings are entitled to deference under AEDPA unless they are unreasonable. *See Mendez v. Knowles*, 556 F.3d 757, 771 (9th Cir. 2009).

**[6]** Finally, the trial court had very little clinical or psychiatric evidence before it regarding Stanley's mental health history. *Cf. Drope*, 420 U.S. at 164 n.1 (noting that the trial court had a psychiatric report stating that defendant "had difficulty in participating well" and "was markedly circumstantial and irrelevant in his speech"); *Maxwell*, 606 F.3d at 570 (finding it significant that "the trial judge was aware of Maxwell's mental health history"). The sole expert opinion on Stanley's mental state was given by Dr. Axelrad during a pretrial *Miranda* hearing. Dr. Axelrad testified at that hearing only that Stanley suffered from alcohol withdrawal, sedative intoxication, alcohol dependence, and amphetamine abuse at the time he gave statements to the police. Later, during the pen-

alty phase, Dr. Axelrad testified to additional psychiatric diagnoses, but there is no evidence in the record that suggests these diagnoses were known or discussed during the guilt phase.

**[7]** On this record, the trial judges were not unreasonable in concluding that there was insufficient evidence of incompetency to warrant a sua sponte order for a competency hearing, and the California Supreme Court was not unreasonable in denying Stanley's due process claim.

### B. Ineffective Assistance of Counsel Claim

**[8]** Stanley also challenges trial counsel's failure to move for competency proceedings during the guilt phase. The district court held that the state court was not unreasonable in holding that Neill and Petersen did not provide ineffective assistance of counsel in failing to move for such proceedings. We agree.

Under *Strickland v. Washington*, 466 U.S. 668 (1984), an ineffective assistance of counsel claim has two components. "First, the defendant must show that counsel's performance was deficient." *Id.* at 687. This requires showing that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

**[9]** Counsel's failure to move for a competency hearing violates the defendant's right to effective assistance of counsel when "there are sufficient indicia of incompetence to give objectively reasonable counsel reason to doubt the defendant's competency, and there is a reasonable probability that

the defendant would have been found incompetent to stand trial had the issue been raised and fully considered." *Jermyn v. Horn*, 266 F.3d 257, 283 (3d Cir. 2001).

> The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable — a substantially higher threshold. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ('[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.').

*Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009) (one citation and one set of internal quotation marks omitted).

[10] The record shows that defense counsel Neill and Petersen were intimately familiar with Stanley's mental difficulties and that they paid careful attention to Stanley's ability to participate in his defense. Defense counsel were well aware that Stanley relied on medication to manage his anxiety. Dr. Axelrad told counsel that with proper medication and careful monitoring, Stanley would be able to assist in his defense. When problems with Stanley's medication arose, counsel interrupted the proceedings to resolve them.

[11] Neill and Petersen repeatedly consulted with Dr. Axelrad, who had had a "continuing diagnostic relationship" with Stanley during the pretrial phase. Dr. Axelrad never expressed an opinion during this time that Stanley was not competent. When the state trial court held a competency trial during the penalty phase, Dr. Axelrad testified that he had not believed Stanley to be incompetent during the guilt phase, and

that he believed Stanley became incompetent only in the period leading up to, and during, the penalty phase. Even Stanley's post-conviction psychiatric expert, Dr. George Woods, Jr., testified before the magistrate judge that he could not conclude "to a medical certainty" that Stanley was incompetent during the guilt phase.

**[12]** We conclude that there was insufficient evidence of Stanley's incompetence during the guilt phase to justify a conclusion that defense counsel were ineffective in failing to move for competency proceedings. The California Supreme Court was not objectively unreasonable in denying this Sixth Amendment claim.

## C.   Diminished Capacity Claim

Claim 24 of Stanley's amended petition is that "because of Petitioner's mental condition, . . . he is not guilty of the offenses for which he was convicted." The magistrate judge construed this claim as one of ineffective assistance of counsel for failing to present a diminished capacity defense at trial. Stanley contends that the magistrate judge erroneously denied him an evidentiary hearing on this claim. The magistrate judge indicated in his F&R that he had ordered an evidentiary hearing on this claim, but that Stanley failed to produce any evidence at the evidentiary hearing to demonstrate that he suffered from diminished capacity at the time of the offense. The district court disagreed, concluding that the magistrate judge actually denied Stanley an evidentiary hearing on Claim 24. The district court nonetheless affirmed the denial of this claim because Stanley failed to proffer enough evidence to justify holding an evidentiary hearing on this issue. We review for abuse of discretion a district court's decision whether to hold an evidentiary hearing. *Davis*, 384 F.3d at 638.

**[13]** The portion of Claim 24 at issue in this appeal is the claim that counsel were ineffective for failing to raise a diminished capacity defense. The record is somewhat ambigu-

ous on whether the magistrate judge ordered an evidentiary hearing on this portion of the claim. However, even if we agreed with Stanley that the magistrate judge denied an evidentiary hearing, the magistrate judge would have acted properly in so doing, for Stanley failed to proffer sufficient evidence to justify such a hearing.

D.   Rule 54(b) Judgment and Remand to the State Court

Stanley challenges the procedure recommended by the magistrate judge and adopted by the district court for providing relief on the granted claim and for adjudicating the remainder of Stanley's case. First, Stanley challenges the decision to remand to the state court for a determination whether it is feasible to conduct a retrial on the question of Stanley's competency during the penalty phase. Second, Stanley challenges the district court's decision to stay the remaining competency and penalty phase claims pending possible state court proceedings on remand.

1.    Remand to the State Court

The district court granted Claim 21 of Stanley's habeas petition, concluding that a biased juror rendered the penalty phase competency verdict invalid. The district court remanded to the state trial court for that court to determine whether a retrial on Stanley's competency during the penalty phase was feasible, and, if so, for that court to conduct such a retrial.[1] Stanley contends that the remedy devised by the district court was improper because (1) the feasibility question should be decided by a federal court and (2) a retrial should not be held on the record of the initial competence trial because that record is "wholly unreliable" and tainted by constitutional

---

[1]The parties' supplemental briefs filed June 25, 2010, inform us that no hearing has yet been held in state court to consider whether such a retrial is feasible. The district court's conditional writ asking for a such a determination has not been stayed during the appeal to us.

errors. We do not agree with Stanley's first claim that the feasibility question should have been determined by the federal courts. Accordingly, we do not consider Stanley's second claim. Whether a retrial is feasible, and on what record, is a question that may be properly addressed by the state court.

We recognize that rather than remanding to the state court we have sometimes determined for ourselves whether an after-the-fact competency hearing in state court would be feasible or appropriate. *See, e.g.*, *Odle*, 238 F.3d at 1089-90 (concluding that the state court could conduct an after-the-fact competency hearing). However, we have sometimes left the decision to the state court whether to hold such a hearing or trial. For example, in *Miles v. Stainer*, 108 F.3d 1109, 1114 (9th Cir. 1997), we made no finding on feasibility and remanded to the district court "with instructions to grant the writ unless the state trial court conducts a hearing within 60 days to determine whether Miles was competent at the time he pled guilty."

**[14]** We see no reason why in this case the state court is not as well qualified as the district court to determine whether it would be feasible for the state court to conduct a retrial to decide Stanley's competency during the penalty phase of his trial. It was not an abuse of discretion for the district court to remand to the state court for that purpose.

## 2.    Rule 54(b) Certification

The district court certified partial judgment under Federal Rule of Civil Procedure 54(b), denying Stanley's guilt phase claims, granting Stanley's penalty phase competency juror bias claim, and staying all remaining penalty phase claims pending state court proceedings on the remanded competency claim. Stanley contends on appeal, as he did before the district court, that (1) the district court's adjudication of the guilt phase claims independent of the remaining claims led to the erroneous rejection of the guilt phase claims; (2) staying the

remaining claims will lead to piecemeal litigation and appeals; and (3) delaying adjudication of the penalty phase claims prejudices Stanley's efforts to obtain relief on those claims.

**[15]** To determine whether Rule 54(b) certification is appropriate, the district court "must first determine that it is dealing with a 'final judgment.' " *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 7 (1980). It then "must go on to determine whether there is any just reason for delay." *Id.* at 8. "It is left to the sound judicial discretion of the district court to determine the 'appropriate time' when each final decision in a multiple claims action is ready for appeal." *Id.* The district court considered the applicable standards and concluded that Rule 54(b) certification was appropriate because it "makes practical sense and ensures the most efficient use of the court's resources."

We must:

> scrutinize the district court's evaluation of such factors as the interrelationship of the claims so as to prevent piecemeal appeals in cases which should be reviewed only as single units. But once such juridical concerns have been met, the discretionary judgment of the district court should be given substantial deference, for that court is the one most likely to be familiar with the case and with any justifiable reasons for delay.

*Id.* at 10 (internal citation and quotation marks omitted). A reviewing court may reverse the district court's assessment of the equities "only if it can say that the judge's conclusion was clearly unreasonable." *Id.*

**[16]** In *Blazak v. Ricketts*, 971 F.2d 1408, 1413 (9th Cir. 1992), we instructed that the important Rule 54(b) question in habeas cases is whether a judgment resolves "all of the

alleged constitutional infirmities arising from the relevant set of operative facts." The district court's granting of relief on Stanley's competency juror bias claim arises from its own set of operative facts. The relevant facts in that claim concern the misconduct of a single juror. It is true that if the district court were later to grant relief on another claim, any competency retrial in the state court could be rendered irrelevant. However, this does not make the claims so interrelated that they must be adjudicated together.

**[17]** Further, the district court's denial of Stanley's guilt phase claims relied on a largely independent set of operative facts. These claims were necessarily time-limited to the months comprising the guilt phase. The evidence indicating that Stanley might have been incompetent, revealed only during the penalty phase, had limited relevance to the district court's evaluation of his competence at the guilt phase. We conclude that the alleged constitutional infirmities during the guilt phase were appropriately considered and rejected first, and that it was a sound exercise of discretion by the district court to certify partial judgment on those claims.

### E.   Uncertified Claim

**[18]** We decline to certify Stanley's uncertified claim that he was denied a "full and fair" opportunity to litigate his Fourth Amendment search and seizure claims during the pretrial phase of his trial. *See Stone v. Powell*, 428 U.S. 465 (1976). Stanley has not made a substantial showing of the denial of a constitutional right in that claim. 28 U.S.C. § 2253(c)(2).

### Conclusion

For the foregoing reasons, we **AFFIRM** the district court's Rule 54(b) judgment in all respects.