Filed 9/6/24  P. v. Martinez CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MARK ZAPATA MARTINEZ,<br><br>Defendant and Appellant. | A168068<br><br>(Sonoma County<br>Super. Ct. No. SCR7207171) |

Defendant and appellant Mark Zapata Martinez (appellant) appeals following his no contest plea to sexual molestation charges.  He contends that the trial court erred in finding he was competent, that the court erred in denying his motion to withdraw his plea, that he received ineffective assistance of counsel, and that there was a violation of the Racial Justice Act (RJA) (Pen. Code, § 745).[1]  We reject appellant's claims.

BACKGROUND

In July 2019, the Sonoma County District Attorney filed an information charging appellant with oral copulation or sexual penetration with a child 10 years old or younger (§ 288.7, subd. (b); counts 1 & 3), forcible lewd act on a child (§ 288, subd. (b)(1); counts 2, 4, 5, 6, & 10), and lewd act on a child

---

[1] All undesignated statutory references are to the Penal Code.

1

(§ 288, subd. (a); counts 7, 8, & 9).  The information was later amended to add an additional lewd act charge (§ 288, subd. (a); count 11).[2]

In March 2020, pursuant to an agreement, appellant pleaded no contest to counts 1 and 11, with an agreed sentence of 15 years to life for count 1 and a concurrent sentence on count 11.

In February 2021, the public defender was appointed to represent appellant in a possible motion to withdraw his plea.  In March, the public defender declared doubt as to appellant's competence and criminal proceedings were suspended pursuant to section 1368.  The trial court referred appellant for an expert competency evaluation.  The evaluator opined in a report that appellant was not competent and the prosecution retained a second expert to perform another evaluation.  The second evaluator opined in his report that appellant was competent.  In April 2022, after a hearing, the trial court found appellant to be mentally competent and reinstated criminal proceedings.

In June 2022, appellant moved to withdraw his plea.  In April 2023, following a hearing and the receipt of testimony, the trial court denied the motion to withdraw.

In May 2023, the trial court sentenced appellant according to the terms of the plea agreement—15 years to life on count 1 and six years concurrent on count 11.  The present appeal followed, and appellant obtained a certificate of probable cause.

---

[2] The underlying facts are not relevant to the issues on appeal.  In brief, appellant, who was a foster parent, was accused of sexually abusing two foster children.

DISCUSSION

I. *The Trial Court Did Not Err in Finding Appellant Competent*

Appellant first contends the trial court erred in finding him competent in April 2022, after a competency trial. As explained below, viewing the record in the light most favorable to the trial court's finding, we conclude the finding is supported by substantial evidence. (*People v. Mendoza* (2016) 62 Cal.4th 856, 871.)

A. *Evidence at Competency Trial*

Dr. Samuel Libeu, an expert in competency evaluations and acting chief psychiatrist at San Quentin State Prison, was appointed by the court to evaluate appellant following the public defender's declaration of doubt regarding appellant's competence. Dr. Libeu testified that appellant repeatedly redirected questions back to "a conspiracy to bring [the criminal] charges against him for the purposes of getting money out of him and his family." That topic "was pervasive throughout [the] entire conversation." Appellant "repeatedly reported" that individuals both outside and inside the legal system were involved in the conspiracy, including "at least two of his attorneys to that point, [police] officers, [and] possibly" the District Attorney and the Judge presiding over the case. Although appellant was "able to demonstrate . . . basic understanding" of the criminal proceedings, "his ability to understand really the purpose of a trial and how that actually takes place was constantly being brought back to this idea that he can't possibly have a fair trial, that everybody is working against him for the reasons I just described because there's this conspiracy to get money out of him."

Dr. Libeu diagnosed appellant with delusional disorder, a "milder form" of schizophrenia "in that it involves specifically and only delusions." He explained that a delusion is a "fixed false belief that is not amenable to

3

change despite conflicting evidence," which lasts for at least a month. As part of the evaluation, Dr. Libeu contacted appellant's prior and then current attorneys—Chris Andrian, a retained private attorney, and Lynette Brown, an appointed public defender. They described how "they had made multiple attempts to explain to [appellant] the reality of the situation, the reality of his legal circumstances, and that in spite of their repeated attempts to provide him with this information that would contradict his beliefs, he persisted in having this belief . . . to the point that it was meeting the definition of a delusion, a persistent, fixed, false belief despite contradictory evidence." Dr. Libeu opined that appellant's delusion would "impair his ability to be fully forthcoming" with his attorneys and "to move past particular concerns and into having a more substantive conversation." Defense counsel Andrian described to Dr. Libeu how appellant became "more and more suspicious of" him, and "more and more rigid about . . . not wanting a trial and mentioning he was feeling pressured into pleading guilty to avoid a trial."

Dr. Libeu admitted that when he performed his assessment he had not known about a civil lawsuit that had been brought against appellant by the alleged victims' father. The expert also admitted he had not known that appellant's prior counsel Mr. Andrian had a "familial or friend relationship" with the attorney in the civil lawsuit. But Dr. Libeu testified the new information did not affect his diagnosis because it is "very common . . . that a lot of the delusional ideas often have a nugget of truth, some event happened or some combination of events, which the mind in this illness warps . . . into a much more elaborate paranoid belief."

The prosecution asked Dr. Omri Berger, an expert in competency evaluations and a staff psychiatrist at San Quentin State Prison, to do a

4

second evaluation. Dr. Berger opined in his testimony that appellant was competent to stand trial because his ability to understand the proceedings and rationally cooperate with counsel was not impaired by a mental disorder. Dr. Berger opined that appellant's conspiracy claim was a "strongly-held" belief "developed from . . . reality-based experiences," rather than a delusion. Appellant "stated that he was innocent of what he's accused of and he stated that he believed the father of the victim or victims . . . essentially orchestrated these charges for financial gain." Appellant explained to Dr. Berger that the father was homeless and had filed a civil lawsuit against "him, his family, and the county." He described his wife being "harassed" during service of papers relating to the lawsuit. Appellant "indicated that it was after he learned about the civil lawsuit that he began to be concerned about this idea of the father orchestrating the charges."

Dr. Berger further characterized appellant's beliefs as a "cynical view of the system as opposed to a delusional belief or paranoia." The expert explained that appellant's distrust of the criminal justice system appeared to be based on a belief that the system was unfair in general, rather than unfair only towards appellant—which "would be more indicative of delusional thinking or paranoia." In particular, appellant referenced "the experience of other inmates at the jail," and he also said the system was unfair to Mexican American individuals.

Dr. Berger also opined that appellant demonstrated understanding of the legal process, evidence, and the nature and seriousness of the charges. He understood how a trial would proceed and the roles of trial participants. He understood he pleaded guilty to receive a lower sentence than he would have received if he went to trial, and he comprehended that withdrawing his plea would lead to a trial.

5

Regarding his guilty plea, Dr. Berger observed that appellant "was struggling with the fact that he both did not want to accept the guilty plea because of again professing his innocence and also not wanting to go to trial because he did not believe he had a chance of winning at trial." He "seemed to struggle with having to make a choice between those two things." Dr. Berger acknowledged that appellant expressed interest in speaking directly to the trial judge "to explain the situation with the hopes of getting released." He opined that was not irrational for someone without experience with the legal system.

Dr. Berger's ultimate diagnosis was that appellant "did have some psychiatric symptoms that . . . meet the diagnostic criteria for adjustment disorder," which is "when an individual develops symptoms in response to a particular stressful event that are clinically significant in that they either cause the individual distress or dysfunction or they're out of proportion to what would be expected for that kind of stressful event." But, because appellant's beliefs were due to "reality-based experiences," even if his interpretations of those events were not correct, and because Dr. Berger did not see evidence appellant was "maintaining these beliefs in the face of clear, contradictory information," appellant did not suffer from delusional disorder. Dr. Berger's "overall opinion" was that appellant "was competent to stand trial because his ability to understand the proceedings and his ability to rationally cooperate with counsel were not impaired due to a mental disorder."

The trial court found appellant was mentally competent to stand trial and reinstated criminal proceedings, observing that "Dr. Berger's testimony [was] more thorough and more persuasive" and emphasizing the legal presumption of competence.

B.    *Analysis*

" 'The United States Supreme Court has "repeatedly and consistently recognized that 'the criminal trial of an incompetent defendant violates due process.' " [Citation.]  A defendant is deemed incompetent to stand trial if he lacks " ' "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding ... [or] a rational as well as factual understanding of the proceedings against him." ' " [Citations.]' [Citation.]  [¶]  'The applicable state statutes essentially parallel the state and federal constitutional directives.  Section 1367, subdivision (a) provides: "A person cannot be tried or adjudged to punishment while that person is mentally incompetent.  A defendant is mentally incompetent for purposes of this chapter if, as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner." ' [Citations.]  [¶]  When the defendant puts his or her competence to stand trial in issue, the defendant bears the burden of proving by a preponderance of the evidence that he or she lacks competence." (*People v. Mendoza, supra,* 62 Cal.4th at p. 871.)

On appeal, appellant argues the trial court's finding is not supported by substantial evidence because the prosecution's expert did not adequately explain two of appellant's beliefs, "namely, (1) that both of [a]ppellant's attorneys, Andrian and Brown, were part of the conspiracy against him, and (2) that if [a]ppellant were allowed to express his innocence by speaking directly with the Judge the case would be resolved and he could go home." Appellant's argument is misplaced.  At the outset, it was appellant's burden to prove he was incompetent, and the trial court was entitled to rely on Dr. Berger's thorough analysis and opinion that appellant was competent.

7

Appellant cites to nowhere in the record where appellant reported to Dr. Berger that attorneys Andrian and Brown were part of a conspiracy against him, and he cites no authority Dr. Berger's opinion could be undermined by supposed delusions reported months earlier to Dr. Libeu.[3] Furthermore, the trial court was entitled to rely on Dr. Berger's explanation that appellant's views reflected a "cynical" view of the system rather than a delusional belief in a conspiracy, and Dr. Libeu's opinion was undermined by his admission that he was unaware of critical facts when he made his assessment, such as the existence of the civil case and Mr. Andrian's connection to an attorney in the civil case.

As to appellant's desire to speak directly to the trial court, Dr. Berger opined that appellant's belief that such direct communication could be helpful was not irrational given appellant's lack of experience with the legal system.

---

[3] Appellant argues in his reply brief that Dr. Berger "essentially adopted what [Dr. Libeu] discussed as [a]ppellant's bizarre beliefs and then the prosecution doctor attempted to do precisely that—explain every significant irrational belief with a fact-based antecedent." That is incorrect. Although Dr. Berger considered Dr. Libeu's report, Dr. Berger's report and testimony evaluated appellant's competence based primarily on Dr. Berger's own interviews with appellant. He wrote in his report: "Given his prior claims of a conspiracy . . ., I carefully considered the possibility that [appellant] was experiencing a delusion, either due to Delusional Disorder or another psychotic disorder. . . . [¶] In a prior evaluation, [appellant] reportedly expressed the belief that a conspiracy to steal money from him and his family began in the year prior to his case and was the basis for his case. He reportedly also expressed the belief that unknown individuals were responsible for this conspiracy, that these individuals harassed his family prior to the emergence of his case, and that multiple individuals involved in the legal process were involved in this conspiracy. However, during my examination, [appellant] *did not endorse these same beliefs*." (Emphasis added.)

8

Appellant has not shown the trial court was compelled to accept Dr. Libeu's characterization of that belief as a delusion.

Finally, appellant argues the existence of the civil lawsuit was not adequate to explain all of the beliefs reported to Dr. Libeu, including the breadth of the supposed conspiracy against him. But the argument is again misplaced: appellant cites to nowhere in the record where appellant told Dr. Berger that there was the type of all-encompassing conspiracy Dr. Libeu described. Instead, appellant spoke of persecution by the victim's father, mistrust of Mr. Andrian because of his connection to a civil case attorney, concern about coordination between the district attorney and the civil case attorney, mistreatment by the police, and general mistrust of the system. Dr. Berger's report indicates that appellant expressed some confidence in his current attorney, commenting "[t]he attorney who is representing me now said there is no evidence against me." And, again, Dr. Libeu's assessment of appellant's belief in a conspiracy was undermined by his unawareness of the civil case and Mr. Andrian's connection to one of the attorneys involved in the case. The trial court could reasonably accept Dr. Berger's explanation that appellant's beliefs were based on his interpretations of actual events and a general cynical view of the system, rather than delusions resulting from a mental disorder. (See *People v. Buenrostro* (2018) 6 Cal.5th 367, 389 [" '[a]s a matter of law and logic,' incompetence to stand trial 'must arise from a mental disorder or developmental disability that limits his or her ability to understand the nature of the proceedings and to assist counsel.' "].)

Appellant has not shown the trial court erred in finding him competent.

9

II.    *The Trial Court Did Not Err in Denying Appellant's Motion to Withdraw His Plea*

Following the trial court's finding he was competent, appellant moved to withdraw his March 2020 plea on the ground that he was incompetent at the time of the plea. The court did not abuse its discretion in denying the motion to withdraw.

A.    *Evidence at Hearing on Motion to Withdraw*

Appellant's prior attorney, Mr. Andrian, testified at the April 2023 hearing on appellant's motion to withdraw his plea. He represented appellant from the beginning of the case through the March 2020 no contest plea. Mr. Andrian explained to appellant that his options were either to go to trial or to resolve the case through a plea deal. Appellant insisted on a "third option" of speaking directly to the trial court judge, believing the case could be resolved that way. Before the March 2020 plea, Mr. Andrian "was getting to that point where" he "really was doubting whether [appellant] was competent because [Mr. Andrian] couldn't get [appellant] to understand the process." But on the day of the plea, Mr. Andrian felt that he and appellant had "gotten over the hump" of appellant's unwillingness to choose between a plea and trial. Mr. Andrian did not "feel good" about the plea after the hearing, because there were a number of issues with the prosecution's case, even though appellant insisted he "absolutely positively did not want a jury trial."

Subsequently, Mr. Andrian formed "serious doubt" as to appellant's competency because appellant refused to meet with the probation office regarding the presentence report, unless he talked to the trial court judge first. "[A]t that time," Mr. Andrian also became aware that appellant "was overtly stating that [Mr. Andrian] had pressured him to enter a plea."

10

Mr. Andrian continued, "And so rather than me myself declaring a doubt, the case got passed off to [public defender] Brown who took over the case as counsel when [appellant] wanted to withdraw his plea." Mr. Andrian did not believe it would be appropriate to raise doubts about appellant's competency right after appellant had accused him of pressuring appellant to plead guilty. He did not say anything to Ms. Brown because he did not want to "color" her assessment of appellant's competency. He believed, "if it's obvious to me, maybe someone else will pick this up." In "hindsight," Mr. Andrian questioned whether appellant's plea was intelligent and voluntary.

Appellant testified he believed the charges against him were due to a conspiracy by the victims' father, appellant's attorneys, a prior prosecutor, and the judges who heard his case. Before he pled no contest, he told Mr. Andrian that he wanted to speak directly to the judge, but Mr. Andrian ignored him. Mr. Andrian "seemed very forcible" in telling appellant his only options were to plead or go to trial. Mr. Andrian pressured him to accept the plea deal, telling him that the judge and district attorney had threatened to "[w]ring [his] neck" at trial if he did not take the deal.

Appellant also believed Mr. Andrian was "a hundred percent . . . involved" in the civil suit. Appellant had suggested that Mr. Andrian speak with the victims, but Mr. Andrian said the attorney in the civil lawsuit was the son of Mr. Andrian's "best friend" and "it was his first case and . . . [Mr. Andrian] didn't want to interrupt that."

The trial court denied the motion to withdraw the plea. The court found that appellant's testimony was not credible. With respect to Mr. Andrian's testimony, the court stated, "[W]e are dealing with a date in which the plea was entered, and Mr. Andrian made many, many appearances

11

with [appellant].  He never declared a doubt."  The court characterized appellant's effort to withdraw his plea as "buyer's remorse."

B.    *Analysis*

"Section 1018 provides, in part: 'On application of the defendant at any time before judgment . . ., the court may, . . . for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted. . . . This section shall be liberally construed to effect these objects and to promote justice.'  The defendant has the burden to show, by clear and convincing evidence, that there is good cause for withdrawal of his or her guilty plea. [Citations.]  'A plea may not be withdrawn simply because the defendant has changed his [or her] mind.'  [Citation.]  The decision to grant or deny a motion to withdraw a guilty plea is left to the sound discretion of the trial court."  (*People v. Breslin* (2012) 205 Cal.App.4th 1409, 1415–1416.)

Appellant argues, "The evidence presented by [Mr.] Andrian was consistent with Dr. Libeu's diagnosis and furthermore showed the importance of the two significant delusional beliefs that Dr. Berger and the prosecutor had failed to adequately explain—[a]ppellant's distrust of his lawyers as being part of the conspiracy and [a]ppellant's belief that if he were allowed to talk directly to the judge he would be exonerated."  But that argument fails to undermine the trial court's ruling because the court found appellant was not credible and because the court previously rejected Dr. Libeu's diagnosis of delusional disorder.  Appellant suggests it is unclear what the court meant by its credibility finding.  We disagree.  It is clear the court meant that it did not believe appellant was telling the truth in describing his state of mind.  As the court explained, the court believed the motion to withdraw the plea was due to "buyer's remorse," not because appellant was actually incompetent at the time of the plea.

12

Appellant also emphasizes Mr. Andrian's testimony that he had doubts about appellant's competency.  But, as respondent points out, Mr. Andrian did not testify appellant was incompetent when he entered his plea.  Instead, he testified that he had "serious doubt" about appellant's competency around the same time the public defender was appointed (a year after the plea).  Nothing in Mr. Andrian's testimony provided decisive evidence of appellant's incompetency at the time of appellant's entry of plea.

Appellant has not shown the trial court abused its discretion in denying the motion to withdraw appellant's plea.[4]

III.    *Appellant Did Not Receive Ineffective Assistance of Counsel*

Appellant contends he received ineffective assistance of counsel (IAC) because Mr. Andrian did not declare doubt about appellant's competency at any point during his representation of appellant.

"To show [IAC], defendant has the burden of proving that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different."  (*People v. Kelly* (1992) 1 Cal.4th 495, 519–520.)  "Counsel's failure to move for a competency hearing violates the defendant's right to effective assistance of counsel when 'there are sufficient indicia of incompetence to give objectively reasonable counsel reason to doubt the defendant's competency, and there is a reasonable probability that the defendant would have been found incompetent to stand trial had the issue been raised and fully considered.' "  (*Stanley v. Cullen* (9th Cir. 2011) 633 F.3d 852, 862.)

---

[4] Appellant argues that the standard of review is substantial evidence rather than abuse of discretion.  We reject that contention, which is not supported by any citations to authority.  In any event, our conclusion would be the same under either standard of review.

13

In arguing that Mr. Andrian's representation fell below an objective standard of reasonableness, appellant references an American Bar Association Criminal Justice Standard stating that, "Defense counsel may seek an ex parte evaluation or move for evaluation of the defendant's competence to proceed whenever counsel has a good faith doubt about the defendant's competence, even if the motion is over the defendant's objection." (ABA Stds. for Crim. Justice on Men. Health (4th ed. 2016) std. 7–4.3(c).)[5] However, as explained previously, Mr. Andrian testified that, although he had trouble getting appellant to understand and accept the situation, he believed appellant was competent when appellant entered his plea. He testified he formed "serious doubt" about appellant's competency a year later, at the same point in time that appellant accused Mr. Andrian of pressuring appellant to plead no contest and the public defender was appointed to the case.

Appellant has not shown Mr. Andrian's representation fell below an objective standard of reasonableness. Mr. Andrian was not deficient in failing to raise a doubt about appellant's competency at the time of entry of the plea, when, according to his testimony, he did not doubt appellant's competency. Neither does appellant cite evidence that would have led objectively reasonable counsel to doubt appellant's competency. And at the time Mr. Andrian did doubt appellant's competency, the public defender was appointed to represent appellant in a possible motion to withdraw his plea. Given the circumstances, appellant has not shown it was unreasonable for Mr. Andrian to conclude it was appropriate to allow Ms. Brown to make her own judgment about appellant's competency.

---

[5]<https://www.americanbar.org/content/dam/aba/publications/criminal_ justice_standards/mental_health_standards_2016.authcheckdam.pdf>

Furthermore, appellant has not shown a reasonable probability the result of the motion to withdraw the plea would have been different had Mr. Andrian declared doubt at the time appellant sought to withdraw his plea. In denying the motion to withdraw, the trial court focused on Mr. Andrian's failure to declare doubt during his "many, many appearances," including at the time of entry of the plea. The court expressly found that appellant's testimony was not credible and characterized the motion as "buyer's remorse." There is no likelihood the court would have viewed the matter differently if Mr. Andrian had declared a doubt for the first time in conjunction with appellant's motion to withdraw his plea.[6]

Appellant has not shown he received IAC.

IV.     *Appellant Has Not Shown a Violation of the RJA*

Finally, appellant contends the prosecutor and Dr. Berger violated the RJA at the competency trial by appealing to implicit negative stereotypes about Mexican Americans. The claim fails.

As noted previously, Dr. Berger stated during his testimony that appellant expressed a belief that "the system" was "unfair to Mexican American individuals." Dr. Berger's report related similar statements by appellant: that he could not receive a fair trial as a Mexican American, that a lot of police officers are racist, that his arrest was due to racism, and that he experienced differential treatment in custody due to his ethnicity. Also, the prosecutor stated in closing argument that, "The last prong is that

---

[6] We reject appellant's contention that prejudice is presumed, because appellant has not shown " 'an actual conflict of interest adversely affected [Mr. Andrian's] performance.' " (*Strickland v. Washington* (1984) 466 U.S. 668, 692.) In any event, the trial court's clear ruling, based on its credibility finding and Mr. Andrian's failure to raise a doubt over "many, many appearances," overcomes any presumption of prejudice.

15

[appellant] needs to understand his own status and conditions within the criminal proceedings, which [appellant] is clearly able to articulate. He's able to articulate that he is essentially stuck between . . . a rock and a hard place. He understands that the penalties could include a very significant time in prison. . . . He understands his status in the system and who he is. He talks about bias against [him] because he's a Mexican American individual, the experiences he's had in jail where he sees that nobody wins in this system, this system is just stacked against him." On appeal, appellant argues those statements violated the RJA because they "appeal[ed] to implicit racial stereotypes in their arguments that [a]ppellant's beliefs were not the result of a delusional disorder."

At the outset, we agree with respondent's contention that the claim has been forfeited because appellant did not object below. (*People v. Lashon* (2024) 98 Cal.App.5th 804, 815 (*Lashon*) ["a defendant may be found to have forfeited a section 745 claim of racial bias made for the first time on direct appeal in the absence of a showing that an exception to the forfeiture doctrine applies"].)

In any event, the claim fails. "To further the goal of eliminating racial bias in criminal proceedings, subdivision (a) of section 745 provides that '[t]he state shall not seek or obtain a criminal conviction or seek, obtain, or impose a sentence on the basis of race, ethnicity, or national origin.'" (*Lashon*, *supra*, 98 Cal.App.5th at p. 809.) As relevant here, a violation of the RJA is shown if "[d]uring the defendant's trial, in court and during the proceedings, the judge, an attorney in the case, a law enforcement officer involved in the case, an expert witness, or juror, used racially discriminatory language about the defendant's race, ethnicity, or national origin, or otherwise exhibited bias or animus towards the defendant because of the defendant's race, ethnicity,

16

or national origin, whether or not purposeful. This paragraph does not apply if the person speaking is relating language used by another that is relevant to the case or if the person speaking is giving a racially neutral and unbiased physical description of the suspect." (§ 745, subd. (a)(2); see also *Young v. Superior Ct. of Solano Cnty.* (2022) 79 Cal.App.5th 138, 147.)

In the present case, the last sentence of section 745, subdivision (a)(2) is plainly applicable. Dr. Berger and the prosecutor related language used by appellant in describing his beliefs, and the language related was directly relevant to the prosecutor's argument that appellant's views about his case were based on his view of the criminal justice system rather than any delusion. Appellant has failed to show a violation of the RJA.

DISPOSITION

The judgment is affirmed.

SIMONS, J.

We concur.

JACKSON, P. J.
CHOU, J.

(A168068)

17