NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| DAVID ALLEN RUNDLE, | No.  16-99012 |
| Petitioner-Appellant, | D.C. No.<br>2:08-cv-01879-TLN-KJN |
| v. | |
| RON DAVIS, Warden, | MEMORANDUM[*] |
| Respondent-Appellee. | |

Appeal from the United States District Court
for the Eastern District of California
Troy L. Nunley, District Judge, Presiding

Argued and Submitted June 18, 2019
San Francisco, California

Before:  N.R. SMITH, NGUYEN, and OWENS, Circuit Judges.

Petitioner David Allen Rundle appeals the district court's denial of his

federal habeas petition seeking relief from the death penalty on the ground that trial

counsel provided ineffective assistance during the penalty phase.  Rundle's habeas

petition is circumscribed by the Antiterrorism and Effective Death Penalty Act

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

("AEDPA"), 28 U.S.C. § 2254.  Reviewing the district court's decision *de novo*, *Williams v. Woodford*, 384 F.3d 567, 586 (9th Cir. 2004), we affirm.

A California state court jury convicted Rundle of two counts of first-degree murder and attempted forcible rape of eighteen-year-old Caroline Garcia and fifteen-year-old Lanciann Sorensen.  The jury found true special circumstances that Rundle was convicted of multiple murders and that he committed the murders in the course of attempting to rape his victims.  Following the penalty phase—during which the jury was presented with significant aggravating evidence, including that Rundle sexually assaulted and murdered a third young woman, sexually assaulted and threatened to kill three young children, and physically and sexually abused his ex-wife—the jury returned a verdict of death.  After the California Supreme Court summarily denied Rundle's state habeas petition,[1] Rundle filed a federal habeas petition, which the district court denied.

Under AEDPA, federal habeas relief may be granted only if the state court's decision on the merits "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in

---

[1] The California Supreme Court summarily denied all of Rundle's habeas claims, with the exception of one claim challenging the method of execution, which the California Supreme Court denied as premature and without prejudice.

light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Because the California Supreme Court summarily denied Rundle's penalty-phase ineffective assistance of counsel claim, Rundle must show that "there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). We "must determine what arguments or theories . . . could have supported[] the state court's decision; and then [we] must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with . . . a prior decision of [the Supreme] Court." *Id.* at 102. This standard, which is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam), is purposefully "difficult to meet," *Richter*, 562 U.S. at 102.

To prevail on an ineffective assistance of counsel claim under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), Rundle must show both that counsel's performance was deficient and that he suffered prejudice due to counsel's deficiency. Rundle's failure to meet either prong is fatal to his claim. *Id.*

Rundle argues that counsel's performance was deficient because counsel (1) failed to investigate and present mitigating evidence; (2) failed to adequately challenge the admissibility of Dr. Irwin Lyons' testimony; (3) called Dr. Richard Thomas as a defense witness; (4) failed to request a competency hearing; and (5) failed to object to prosecutorial misconduct. We need not address the performance

3

prong of the *Strickland* analysis because it was not unreasonable for the California Supreme Court to conclude that Rundle was not prejudiced by any purported deficiency in counsel's performance. *Id.* at 697. To establish prejudice under *Strickland*, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. To make this assessment, we "compare the evidence that actually was presented to the jury with the evidence that might have been presented had counsel acted differently." *Clark v. Arnold*, 769 F.3d 711, 728 (9th Cir. 2014) (quoting *Murtishaw v. Woodford*, 255 F.3d 926, 940 (9th Cir. 2001)).

The aggravating evidence presented to the jury was simply overwhelming. Rundle's murders and attempted forcible rapes of Garcia and Sorensen were gruesome and disturbing. The young women's naked dead bodies were found in rural areas in Placer County, California, with their arms tied tightly behind their backs. Rundle testified that he sodomized and strangled Garcia to the point where blood came out of her mouth. Rundle confessed to killing Sorensen. He also testified that he was sexually aroused after murdering these young women and that he had sex with their dead bodies, and that it was more exciting than any other prior sexual encounters because he had total control over them.

The jury also heard other significant aggravating evidence, including

4

Rundle's confession to the sexual assault and murder of a third woman, twenty-four-year-old Elizabeth Lactawen. Lactawen's naked body was found near the Sacramento River with her hands tied behind her back, and a cloth tied over her mouth. The condition of Lactawen's body suggested she had been raped and sodomized. The pathologist that performed the autopsy found that Lactawen was likely killed by strangulation with a thin rope or wire. The jury heard evidence about Rundle's threats and sexual assaults of three young children when he was a teenager. Rundle sexually assaulted a six-year-old girl after threatening to kill her with a rock if she did not do as he said. Even after being caught and punished for assaulting the six-year-old girl, Rundle went on to assault an eleven-year-old boy and a twelve-year-old boy. Rundle forced the boys to strip, commanded one of the boys to "fuck" the other, and forced them to orally copulate him. Rundle threatened to kill the boys if they spoke of what happened. The jury also heard evidence about Rundle's abuse of his ex-wife, whom he sodomized, forced to orally copulate him to the point where she vomited on his penis, pushed from a moving car, and whose head he, on one occasion, pounded into the ground repeatedly.

Rundle argues that counsel was ineffective for failing to investigate and present mitigating evidence. But defense counsel in fact presented the jury with Rundle's strongest mitigating evidence, the most significant of which was

Rundle's testimony that his mother, Jane Rundle ("Jane"), sexually abused him throughout his childhood and into his teenage years. Rundle's uncle testified that when Rundle was an infant, he had suspected that Jane was sexually abusing Rundle because Rundle had severe chafing on his penis, which was meant to corroborate Rundle's claim of incest. This testimony is particularly impactful because it supports the theory that Jane had been sexually abusing Rundle from the time he was an infant. The jury also heard from Dr. Richard Yarvis who testified about the "disastrous" impact that incest has on victims. He testified that it is unlikely that a victim of incest would be "normal" in a psychological sense. He explained that victims of parental incest often suffer from feelings of guilt, despondency, anxiety, and anger, which is caused by the parent compelling the victim to engage in acts the victim knows are wrong. He also testified about hypothetical scenarios that might trigger Rundle to act out in rage as a result of the abuse he suffered. Evidence relating to Jane's incestuous abuse of Rundle was likely the most powerful mitigating evidence available to the defense, given its horrific nature and likelihood to cause great sympathy for Rundle.

Other mitigating evidence presented included testimony from Rundle's previous employers who described Rundle as a hard-working, conscientious, and trustworthy employee. Rundle's instructor from his high school equivalency program, who met with Rundle in jail once a week for about two months, testified

6

that he was a quiet, focused, and thorough student. A jail sergeant testified that Rundle assisted jail officials with preventing an inmate from escaping and locating two prisoner-made weapons. A defense investigator testified that Rundle's ex-wife told him that Rundle's relationship with his family was strained and that she had never seen them act affectionately toward one another. Rundle's ex-wife also reported that Rundle had mentioned his mother had weird sexual "quirks."

Rundle argues that counsel should have presented other mitigating evidence: (1) physical and emotional abuse that he suffered separate from his mother's incestuous assaults, (2) his mother's own sexual abuse by her father, (3) his mental health, (4) his history of substance abuse, and (5) institutional failures. But much of this evidence was presented in some fashion. *See Cullen v. Pinholster*, 563 U.S. 170, 202 (2011) ("Having already heard much of what is included in the state habeas record, the jury returned a sentence of death."). For example, Dr. Yarvis testified that Rundle's father "tended at times to be physically abusive" when he was home. While Jane's father's abuse of her was not introduced, testimony of Jane's abuse of Rundle was presented, with others corroborating her horrible treatment of Rundle. While counsel did not present evidence explicitly connecting Jane's abuse of Rundle to Rundle's crimes, evidence was presented to the jury upon which the jurors could draw inferences and connect the dots on their own. Dr. Yarvis testified about the horrible psychological impacts caused by maternal

7

incest.  And if the defense had done as Rundle now argues, calling witnesses like Jack Denman to testify, that might have brought in additional aggravating evidence, like Rundle's alleged sexual ignorance when he failed in his attempt to rape a woman when he was fourteen because he "didn't know what to do."  This evidence could have undercut Rundle's strongest mitigating evidence—that Rundle had been raped by his mother throughout his childhood.

Evidence was also introduced that Rundle engaged in substance abuse—that he used LSD and smoked marijuana.  And although more evidence about his drug use could have been introduced, it was not unreasonable for the California Supreme Court to conclude that such evidence would not have been helpful to Rundle's case.  Rundle walked the jurors through his actions when he committed the crimes, demonstrating that he was aware of what he was doing at the time. Rundle did not commit the crimes while suffering from some sort of hallucination or other drug-induced unawareness of reality.  Additional testimony about his mental health and drug use would not have made a difference in the penalty phase given the horrific nature of his crimes.

As to the mitigating evidence that society and institutions failed Rundle, the jurors heard testimony that allowed them to draw the inference that Rundle's treatment at St. Anthony's Youth Services Center, a state juvenile facility for delinquent children, had not resolved his deeply-rooted issues.  Additionally,

8

calling witnesses like Dr. Kenneth Wrenn could have led to the introduction of additional aggravating evidence, like the fact that Dr. Wrenn knew that Rundle "liked to show off his penis" at school, and, on one occasion, was reported by another student for "masturbating against a pole" at recess.

Rundle also argues that counsel failed to challenge the admissibility of Dr. Lyons' testimony and failed to effectively cross-examine him. But it was not unreasonable for the California Supreme Court to have concluded that these purported failures did not prejudice Rundle. While Dr. Lyons' testimony that Rundle "had a defect in his conscience," was "amoral," and suffered from rage attacks was not helpful to Rundle's defense, it is not likely that this evidence tipped the scales with respect to the death sentence, in light of the severe aggravating evidence. Even if the defense was successful in excluding those statements by Dr. Lyons, the jurors had more than sufficient evidence to reach the same conclusions about Rundle—that he was amoral, had a defect in his conscience, and was subject to rage attacks—in light of the nature of his repeated horrific conduct.

And while Dr. Thomas's testimony that Rundle suffered from "explosive personality disorder" and that "it is a matter of time before somebody gets violated again," was not helpful to the defense, it was not so significant that its omission would have led to a reasonable probability of a different outcome. *Strickland*, 466 U.S. at 694. Rundle assaulted three children, went on to beat and sexually assault

9

his wife, and then sexually assaulted and murdered three women. In light of this aggravating evidence, the jury could infer that it was only a matter of time until Rundle violated someone again.

Rundle argues that counsel was ineffective for failing to request a competency hearing, but nothing in the record shows that Rundle did not have the "present ability to consult with his lawyer with a reasonable degree of rational understanding" or that he did not have "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam). Thus, the California Supreme Court could have reasonably concluded that Rundle did not suffer any prejudice.

Finally, as for Rundle's allegation that counsel was deficient for failing to object to prosecutorial misconduct, the challenged statements by the prosecutor were largely permissible argument. In any event, as discussed above, any alleged error did not result in prejudice.

**AFFIRMED.**

10